**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**NELSON ALBERTO SANCHEZ CASTELLON,**

**Petitioner,**

**v.** **Case No. 2:26cv431**

**NEY HIDALGO, *et al.*,**

**Respondents.**

## REPORT AND RECOMMENDATION

Pending before the Court is a Petition for a Writ of Habeas Corpus submitted pursuant to 28 U.S.C. § 2241 ("Petition"), ECF No. 1. This case was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(A)–(B) and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons explained below, the undersigned **RECOMMENDS** that the Petition, ECF No. 1, be **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Nelson Alberto Sanchez Castellon ("Petitioner") filed the instant Petition seeking release from ICE custody or a fair bond hearing before an Immigration Judge ("IJ"). ECF No. 1 at 8. Petitioner was taken into immigration custody on April 24, 2025, and is currently housed at Caroline Detention Center, located in the Eastern District of Virginia. *See id.* at 1, 5.

### 1. Petitioner's Immigration History

Petitioner is a native and citizen of El Salvador. ECF No. 7, attach. 1 at ¶ 5. On June 15, 2022, Customs and Border Protection ("CBP") encountered Petitioner in the Rio Grande Valley, Texas Border Patrol Sector. *Id.* at ¶ 6. CBP agents placed Petitioner into expedited removal proceedings pursuant to 8 U.S.C. § 1225(b)(1)(A) and detained him under 8 U.S.C. §

1225(b)(1)(B)(iii)(IV). *Id.* On June 28, 2022, Petitioner expressed a fear of returning to El Salvador and was referred for a credible fear interview with U.S. Citizenship and Immigration Services ("USCIS"). *Id.* at ¶ 7.

On August 1, 2022, an Asylum Officer conducted a credible fear interview and determined that Petitioner had not established a credible fear of persecution or torture if returned to El Salvador. *Id.* at ¶ 8. Petitioner requested review of that determination by an IJ on August 15, 2022. *Id.* at ¶ 9. On August 22, 2022, the Immigration Judge vacated the Asylum Officer's determination and found that Petitioner had established a credible fear of persecution or torture. *Id.* at ¶ 10. The following day, August 23, 2022, Petitioner was served with a Notice to Appear ("NTA") charging him as removable under 8 U.S.C. §§ 1182(a)(6)(A)(i) and 1182(a)(7)(A)(i)(I) because he was unlawfully present in the United States without being admitted or paroled and without a valid entry document. *Id.* at ¶ 11. On August 31, 2022, Petitioner was paroled from custody pursuant to 8 U.S.C. § 1182(d)(5)(A) for a period of one year. *Id.* at ¶ 12.

On September 18, 2023, Petitioner filed an application for asylum and withholding of removal with the Immigration Court. *Id.* at ¶ 13. At a Master Calendar Hearing held on December 19, 2023, the IJ sustained the charges of removability contained in the NTA. *Id.* at ¶ 14.

In March and April 2025, U.S. Immigration and Customs Enforcement ("ICE") reviewed Petitioner's immigration history and determined that Petitioner was a member of the MS-13 gang. *Id.* at ¶ 15. On April 24, 2025, ICE agents encountered Petitioner in Dulles, Virginia, and detained him pursuant to 8 U.S.C. § 1225(b)(1)(A)(ii). *Id.* On May 15, 2025, Petitioner requested a bond redetermination with the Immigration Court. *Id.* at ¶ 16. Following a bond hearing on May 28, 2025, the IJ denied Petitioner's request, finding that Petitioner posed a danger to the community based on his membership in MS-13 and his criminal history in El Salvador. *Id.* at ¶ 17. Although

Petitioner reserved his right to appeal, he did not appeal the bond determination to the Board of Immigration Appeals ("BIA") by the June 27, 2025, deadline. *Id.*

Removal proceedings continued with an additional Master Calendar Hearing on June 18, 2025, after which the Immigration Court scheduled a merits hearing for December 5, 2025. *Id.* at ¶ 18. At the merits hearing, Petitioner withdrew his asylum application without prejudice and proceeded with his applications for withholding of removal under 8 U.S.C. § 1231(b)(3), withholding of removal under the regulations implementing the Convention Against Torture, and deferral of removal under those regulations. *Id.* at ¶ 19. The IJ denied all requested relief, ordered Petitioner removed to El Salvador, and Petitioner reserved appeal. *Id.* Petitioner timely appealed the removal order to the BIA on December 11, 2025, where that appeal remains pending. *Id.* at ¶ 20.

**<u>2. Procedural History of the Instant Habeas Petition</u>**

The Court filed the Petition on May 4, 2026. ECF No. 1. Petitioner alleges that his prolonged detention violates his substantive and procedural due process rights under the Fifth Amendment of the United States Constitution. *Id.* at 6–8; 16–19. Petitioner further argues that no matter what statute his detention is classified under, as between § 1226(a) or § 1231(a), his detention still violates his due process rights. *Id.* at 19.

On May 11, 2026, the Court ordered Respondents to show cause why the Petition should not be granted ("the Service Order"). ECF No. 5. Specifically, the Court ordered Respondents to file a response to the Petition addressing: (1) whether the central legal issue in this action is whether Petitioner is considered an applicant for admission or is eligible for discretionary bond, and (2) whether there are any unique factual circumstances that distinguish this Petition from other

recently filed and adjudicated cases presenting the same issue such that the Court should consider this Petition differently. *Id.* at 2.

Respondents filed their response to the Petition on May 18, 2026. ECF No. 7. Respondents contend that the Petition is unique because Petitioner is an applicant for admission subject to mandatory detention under § 1225(b)(1)—not § 1225(b)(2)—and the Immigration and Nationality Act ("INA") precludes judicial review of claims arising from § 1225(b)(1). *Id.* at 1–2, 8–12. Respondents further argue that even if this Court did have jurisdiction, Petitioner's detention has complied with applicable statutory procedures, Petitioner is not entitled to further due process protections, and, even if he was, the relevant tests do not require the relief he seeks. *Id.* at 12–26.

Petitioner filed a submission on July 9, 2026, requesting a status update and asserting that Petitioner has not received any filings in this case since the Court's Service Order, including Respondents' response. ECF No. 8. On July 13, 2026, Respondents filed a notice informing the Court that, on the same day, they sent copies of their filings and the present notice to Petitioner through first-class mail. ECF No. 9.

On July 24, 2026, Petitioner filed his reply, arguing that he is not subject to mandatory detention under § 1225(b)(1) because he is not a recent arrival at the border as contemplated by the statute. ECF No. 10 at 5–7. He further argues that this Court has jurisdiction to review the Petition, that evidence presented at his bond hearing did not establish that he presently poses a danger, that the government relied on outdated information in arguing risk of danger, and that his prolonged detention violates due process regardless of the statutory basis for his detention. *Id.* at 8–13. Accordingly, this matter is ripe for recommended disposition.

## II. DISCUSSION

Pursuant to 28 U.S.C. § 2241, federal courts are authorized to issue a writ of habeas corpus to one who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "The writ of habeas corpus has traditionally 'served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.'" *Luna Sanchez v. Bondi*, No. 1:25-cv-018888, 2025 WL 3191922, at *2 (E.D. Va. Nov. 14, 2025) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). Habeas is "regularly invoked on behalf of noncitizens." *Id.* (quoting *Quispe-Ardiles v. Noem*, No. 1:25-cv-01382, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025)) (additional citations omitted). After considering the response to a habeas petition, "[t]he court shall summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

### 1. Legal Framework

The INA establishes the statutory framework that governs aliens who are detained upon arrival into the United States and those already present in the country.[1] *Abreu v. Crawford*, No. 1:24-cv-01782, 2025 WL 51475, at *3 (E.D. Va. Jan. 8, 2025), *appeal dismissed*, No. 25-6174, 2025 WL 2604455 (4th Cir. Apr. 22, 2025). That framework distinguishes between 8 U.S.C. § 1225, applicable to "noncitizens who are detained *upon arrival* into the United States," and 8 U.S.C. § 1226, applicable to individuals who "have *already entered* the country, legally or otherwise." *Id.*

Pursuant to § 1225(a), an alien detained *upon arrival* into the United States is defined as an "applicant for admission." 8 U.S.C. § 1225(a). The INA distinguishes between two categories of applicants for admission. *Id.* First, § 1225(b)(1) applies to "aliens initially determined to be

[1] Consistent with the INA's text, the Court uses the term "alien" here. *See* § 1101(a)(3) (defining an "alien" as "any person not a citizen or national of the United States").

inadmissible due to fraud, misrepresentation, or lack of valid documentation" and "certain other aliens designated by the Attorney General at his discretion." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (citing § 1225(b)(1)(A)(i) and § 1225(b)(1)(A)(iii)). Aliens who fall into § 1225(b)(1) are generally removed pursuant to an expedited removal process, unless they indicate either an intent to apply for asylum or a fear of persecution. § 1225(b)(1)(A)–(B). They are subject to mandatory detention while they await expedited removal, or while their asylum application is pending. § 1225(b)(1)(B)(ii), (iii)(IV). Second. § 1225(b)(2) is a "catchall provision," applying to "all applicants for admission not covered by § 1225(b)(1)" who are "seeking admission." *Jennings*, 583 U.S. at 287 (citing § 1225(b)(2)(A), (B)). Aliens who fall into § 1225(b)(2)(A) are subject to mandatory detention "if the examining officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted." § 1225(b)(2)(A) (emphasis added).

Pursuant to § 1226(a), an alien who has *already entered* the country may be detained or released on bond pending a removal decision. Detention under § 1226(a) is discretionary; the Attorney General may continue to detain the alien or "may release the alien" on bond or conditional parole.[2] § 1226(a)(1)–(2). Aliens detained under § 1226(a) "are entitled to a bond hearing before an [Immigration Judge] at any time before entry of a final removal order." *Hasan v. Crawford*, 800 F. Supp. 3d 641, 652 (E.D. Va. 2025) (quoting *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1247 (W.D. Wash. 2025)).

Over the last year, Respondents have argued in federal courts throughout the country that an individual who has already entered the country is subject to mandatory detention under §

[2] Irrelevant to the instant Petition, certain aliens are not entitled to release under § 1226(a), including those who "fall into one of several enumerated categories involving criminal offenses and terrorist activities." *See Jennings*, 583 U.S. at 289 (citing § 1226(c)(1)).

1225(b)(2), rather than discretionary detention under § 1226(a) and their argument has generally been rejected by numerous courts within this jurisdiction and around the country. *See, e.g.*, *Quispe v. Crawford*, No. 1:25-cv-1471, 2025 WL 2783799, at *6 (E.D. Va. Sept. 29, 2025) (citing cases); *Ceba Cinta v. Noem*, No. 1:25-cv-1818, 2025 WL 4053171, at *2 (E.D. Va. Oct. 29, 2025); *Duarte Escobar v. Perry*, No. 3:25cv758, 2025 WL 3006742, at *13 (E.D. Va. Oct. 27, 2025).[3] Indeed, there is currently a circuit split on this issue. *Compare Da Cunha v. Freden*, 175 F.4th 61, 96 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713, 734 (6th Cir. 2026); *Alvarez v. Warden, Fed. Det. Ctr. Mia.*, 175 F.4th 1258, 1285 (11th Cir. 2026); *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026), *with Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026); *Herrera Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026); *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026). Respondents' position that individuals who are already present in the country are subject to detention under § 1225 "reflects DHS's novel interpretation of decades-old immigration detention statutes which . . . is contrary to DHS's implementing regulations and published guidance, the decisions of its immigration judges (until very recently), longstanding practice in U.S. immigration law, the Supreme Court's interpretation of the statutory scheme, and traditional tools of statutory construction." *Ceba Cinta*, 2025 WL 4053171, at *2 (citing cases).

---

[3] *See also Barco Mercado v. Francis*, No. 25-CV-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (supplying an appendix of "at least 350 [] cases decided by over 160 different judges sitting in about fifty different courts spread across the United States" where challengers to "the administration's new position that all noncitizens who came into the United States illegally, but since have been living in the United States, must be detained until their removal proceedings are completed" have prevailed).

**2. Analysis**

In light of the above legal framework, the Court makes the following findings.

*1. Petitioner is Not Subject to Mandatory Detention Under 8 U.S.C. § 1225(b)(1)(B)(ii)*

The central issue raised by the Petition is whether Petitioner's April 2025 detention is governed by § 1225(b)(1)(B)(ii) or § 1226(a). Respondents argue that Petitioner is subject to mandatory detention under § 1225(b)(1)(B)(ii) because, after having previously been paroled into the country in 2022,[4] he remains an "applicant for admission" who was found to have a credible fear of persecution and whose removal proceedings remain pending. ECF No. 7 at 8–11. They contend that Petitioner's 2022 release on parole does not remove him from § 1225(b)(1)'s mandatory detention provisions, and that his subsequent re-detention merely resumed his mandatory detention while his claims for relief remain unresolved. *Id.* Respondents further argue that, even apart from his prior parole, Petitioner independently qualifies as an applicant for admission under § 1225(b)(1) because he was never lawfully admitted into the United States. *Id.* at 10–11. In response, Petitioner argues that he is not subject to mandatory detention under §

[4] Respondents repeatedly mischaracterize Petitioner's release in 2022 as a release "on bond." *See* ECF No. 7 at 9–10 ("Thereafter, Petitioner was placed into standard removal proceedings, issued an NTA, and was released on bond. . . . Petitioner may claim that he is not subject to mandatory detention pursuant to § 1225(b)(1) because he was released from ICE custody on *bond* under §1226(a) in 2022. However, fact that Petitioner was previously released on bond has no bearing Petitioner's *current* detention. . . . Even if this Court were to determine that Petitioner's release on bond no longer renders him detained under 8 U.S.C. § 1225(b)(1), he still meets the *statutory requirements* to be detained under § 1225(b)(1)." (citations omitted)). However, their own evidence—including the sworn Declaration of Charles M. Byrne—establishes that Petitioner was ***paroled*** into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A), not released on ***bond***. *See* ECF No. 7, attach. 1 at ¶ 12 ("On August 31, 2022, Petitioner was paroled from custody pursuant to 8 U.S.C. § 1182(d)(5)(A). His parole was authorized for one year and automatically terminated thereafter.").

This distinction is significant because the Court's analysis turns on the effect of Petitioner's parole and subsequent re-detention—not on a prior bond determination. Petitioner did not receive a bond hearing until May 2025, more than two years after his release on parole, when an Immigration Judge denied his request for bond. *Id.* at ¶¶ 16–17.

1225(b)(1) because he is not a recent arrival at the border as contemplated by the statute. ECF No. 10 at 5–7.

The Court agrees with Petitioner. Section 1225(b)(1)(B)(ii) provides that, if an asylum officer or Immigration Judge determines that an applicant has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Read in context, this provision can be best read as governing detention *during the expedited removal process* created by § 1225(b)(1). The surrounding provisions describe a sequence of events beginning with expedited removal, followed by a credible-fear interview, and concluding with either immediate removal or referral for further proceedings. *See* 8 U.S.C. § 1225(b)(1)(A)–(B). Nothing in the statutory text expressly addresses whether § 1225(b)(1)(B)(ii)'s mandatory detention provision continues to govern after expedited removal proceedings have concluded and the alien has been referred to ordinary removal proceedings under § 1229a.

Here, Petitioner is no longer in expedited removal. After entering the United States in June 2022, Petitioner expressed a fear of returning to El Salvador and ultimately obtained a favorable credible-fear determination from an Immigration Judge. ECF No. 7, attach. 1 at ¶¶ 6–10. He was then served with a NTA commencing ordinary removal proceedings under § 1229a and, shortly thereafter, was paroled into the United States pursuant to § 1182(d)(5)(A). *Id.* at ¶¶ 11–12. After he was released on parole, Petitioner remained at liberty in the United States for more than two years while his removal proceedings continued before ICE re-detained him in April 2025. *See id.* at ¶ 15. Because Petitioner's case has proceeded beyond the expedited removal process governed by § 1225(b)(1) and into ordinary removal proceedings under § 1229a, § 1225(b)(1)(B)(ii) is no longer the appropriate source of authority for Petitioner's current detention.

This outcome is consistent with this Court's reasoning in a similar case, *Gomez Villalobos v. Crawford*, No. 2:26-cv-12, 2026 WL 1165576 (E.D. Va. Apr. 29, 2026). There, this Court rejected the federal respondents' argument that an alien who had been paroled into the United States under § 1182(d)(5) and lived in the country for more than three years without further interaction with immigration authorities remained subject to mandatory detention under § 1225(b). *See id.* at *1, 4–5. This Court explained that, once the petitioner had established a "long-term, albeit unlawful, presence in the United States" after being paroled, he could no longer be considered an "applicant for admission" as contemplated by § 1225(b), and any subsequent re-detention was governed by the statutory framework applicable to pending removal proceedings rather than by § 1225(b)(1). *Id.* at *4–5 ("Therefore, unlike in *Q. Li*, Petitioner had no legal status for over two and a half years, during which he established a long-term, albeit unlawful, presence in the United States. . . . these events cannot be reasonably construed as a valid continuation of the 'legal fiction' that Petitioner was stopped at the border. . . . Accordingly, like a noncitizen who unlawfully enters the United States and is present for years prior to being detected, here, after Petitioner's short-term parole ended, Petitioner established a multi-year presence prior to being 'rediscovered.'" (citations omitted)). That reasoning is persuasive here.

Respondents maintain that Petitioner's later re-detention nonetheless revived the mandatory detention provisions of § 1225(b)(1) because Petitioner has never been lawfully admitted into the United States and therefore remains an "applicant for admission." ECF No. 7 at 8–11. The Court is unpersuaded. As this Court identified in *Gomez Villalobos*, the relevant question is whether Petitioner's later re-detention may be "reasonably construed as a valid continuation of the 'legal fiction' that Petitioner was stopped at the border." *See* 2026 WL 1165576 at *4. Where, as here, Petitioner was paroled into the United States and remained at

liberty for more than two years while his removal proceedings were pending, his later re-detention cannot reasonably be construed as a continuation of that legal fiction. *See id.* at *5 (finding that the "legal fiction" of non-presence "ends when a petitioner has enjoyed years of ***post-parole*** presence" (emphasis added)). Accordingly, Petitioner's detention is governed by the statutory framework applicable to pending removal proceedings, rather than the mandatory detention provision under § 1225(b)(1)(B)(ii). For these reasons, the Court finds that Petitioner is detained pursuant to § 1226(a).

*2. Because Petitioner is Detained Pursuant to 8 U.S.C. § 1226(a), the Court Has Jurisdiction Over the Petition*

Respondents argue that this Court lacks jurisdiction to review the Petition because Petitioner's challenge to his continued detention is, in essence, a challenge to his statutory ineligibility for release under § 1225(b)(1), which is barred by the INA. ECF No. 7 at 11–12. Specifically, Respondents argue that § 1252(a)(2)(A)(iv) precludes federal courts from reviewing the Attorney General's procedures and policies implementing § 1225(b)(1), including the policy rendering applicants for admission ineligible for bond. *Id.* at 11. Respondents further argue that, even if Petitioner's claims fall within the limited category of challenges authorized by § 1252(e)(3)(A), Congress vested exclusive jurisdiction over such claims in the United States District Court for the District of Columbia. *Id.* at 12. In response, Petitioner argues that the Court *does* have jurisdiction to consider his claims because his detention is governed by § 1226(a), and because he is challenging the legality of his prolonged detention. ECF No. 10 at 8.

Respondents' jurisdictional arguments are unpersuasive here. Sections 1252(a)(2)(A)(iv) and 1252(e)(3)(A) apply only to challenges arising from detention under § 1225(b)(1). Because the Court has determined that Petitioner is detained pursuant to § 1226(a), not § 1225(b)(1)(B)(ii), those jurisdiction-stripping provisions do not apply. Rather than challenging the Attorney

General's implementation of the expedited removal process, Petitioner is challenging the legality of his current detention under § 1226(a), a claim properly brought in a petition for habeas corpus under 28 U.S.C. § 2241. Accordingly, this Court has jurisdiction to consider the Petition.

*3. Petitioner Has Already Received All the Process He is Due Under § 1226(a)*

Petitioner alleges that his prolonged detention while his appeal is pending before the BIA violates his due process rights because it has become unreasonably prolonged and no longer serves a legitimate governmental purpose. ECF No. 1 at 6–7. As part of this argument, Petitioner appears to challenge the adequacy of the bond hearing held on May 28, 2025, arguing that the IJ's determination of dangerousness rested on outdated allegations of affiliation rather than "current, individualized evidence of danger or flight risk." ECF No. 10 at 10. According to Petitioner, Respondents' theory that he may reaffiliate with MS-13 was speculative and inconsistent with his own testimony that he abandoned the gang and feared retaliation. *Id.* at 9. Respondents, in turn, argue that Petitioner has already received all the process he is due because he already received a bond hearing before an IJ, who determined that he posed a danger to the community and denied Petitioner's bond redetermination request. ECF No. 7 at 13. Accordingly, Respondents maintain that Petitioner is not entitled to another bond hearing or any additional habeas relief. *Id.*

Because Petitioner is detained pursuant to § 1226(a), he is entitled to the procedural protections afforded by that statute. Aliens detained under § 1226(a) "are entitled to a bond hearing before an [Immigration Judge] at any time before entry of a final removal order." *Hasan*, 800 F. Supp. 3d at 652 (quoting *Rodriguez*, 779 F. Supp. 3d at 1247). Here, Petitioner already received that process. On May 28, 2025, an IJ conducted a bond hearing, considered the evidence presented by both parties, and denied Petitioner's request for release after finding that he posed a danger to the community based on his alleged membership in MS-13 and his criminal history in El Salvador.

ECF No. 7, attach. 1 at ¶ 17; *see* ECF No. 10 at 8–9 (alleging that Petitioner testified at his bond hearing). Although Petitioner reserved his right to appeal that determination, he did not pursue an appeal to the BIA. ECF No. 7, attach. 1 at ¶ 17. Accordingly, Petitioner has already received the process to which he is entitled under § 1226(a).

Petitioner's claims do not identify any procedural deficiency in that bond hearing. Instead, he appears to challenge the IJ's findings and ultimate decision, arguing that the evidence did not establish that he presently poses a danger to the community and that Respondents relied on outdated or speculative evidence of gang affiliation. Those arguments challenge the correctness of the IJ's decision—not the adequacy of the procedures that were used to reach it—and therefore are barred from review by § 1226(e). *See* 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."). To the extent Petitioner believed the IJ erroneously denied bond, his remedy was to appeal the IJ's decision to the BIA, which he failed to do. ECF No. 7, attach. 1 at ¶ 17 ("While Petitioner reserved appeal on the bond denial, he did not appeal the Immigration Judge's decision to the Board of Immigration Appeals, which was due by June 27, 2025."); *see Chavez de Vasquez v. Baker*, No. CV SAG-25-03657, 2025 WL 3713773, at *1 (D. Md. Dec. 23, 2025) ("Petitioner's claim, then, effectively challenges the quantum and nature of evidence placed before the IJ during her bond hearing, not the constitutionality of immigration court procedures. This Court agrees with Respondents that the review Petitioner seeks is particular to the decision in her case and is thus barred by 8 U.S.C. § 1226(e). Petitioner's recourse for what she believes to be an improper assessment of the merits of her entitlement to bond lies in her already pending appeal of the IJ's decision before the Board of Immigration Appeals.").

Finally, the Court cannot say, as a matter of law, that Petitioner's continued detention since April 24, 2025, is constitutionally unreasonable for an alien who has already received a bond hearing and whose removal proceedings remain pending.[5] Even assuming Petitioner's detention has become prolonged, due process requires an individualized bond hearing—not judicial reconsideration of the IJ's discretionary bond determination. *See Miranda v. Garland*, 34 F.4th 338, 346 (4th Cir. 2022) ("[T]he detention procedures adopted for § 1226(a) bond hearings provide sufficient process to satisfy constitutional requirements."). Because Petitioner has already received such a hearing, he has received all the process that is constitutionally due and is not entitled to additional relief.

Accordingly, because Petitioner is subject to detention under § 1226(a) and has already received the bond hearing due to him under that statutory framework, Petitioner has failed to establish that he is entitled to any further habeas relief.

---

[5] However, some courts have concluded that prolonged detention pending the completion of removal proceedings may, under certain circumstances, require an additional bond hearing to satisfy due process. *See Khan v. Byers*, 568 F. Supp. 3d 607, 612 (E.D. Va. 2021) ("Mr. Khan has been detained since October 23, 2018, . . . *more than three years*. This is a period *six times longer* than the presumptively reasonable six-month detention period set forth in *Zadvydas*. . . . Therefore, Mr. Khan is entitled to another bond hearing at which time the Immigration Judge may reevaluate whether Mr. Khan's continued detention is appropriate in light of his prolonged detention and his strong interest in bodily liberty." (citations omitted)); *Fadel v. Warden of Moshannon Valley Ice Processing Ctr.*, No. 3:26-CV-00625, 2026 WL 1649901, at *5 (W.D. Pa. June 8, 2026) ("The Court does not hold that every Section 1226(a) detainee who previously received a bond hearing is automatically entitled to a second hearing once detention reaches a particular length. Nor does the Court review the discretionary merits of the IJ's prior bond denial. Rather, under the specific circumstances presented here [where Petitioner received a bond hearing, that bond was denied because Petitioner failed to establish that he was not a danger to the community and not a flight risk, and Petitioner has now been detained for more than nine months], continued detention without any hearing at which the Government bears the burden of justifying detention violates the Due Process Clause.").

Nonetheless, without more specific, controlling guidance, this Court cannot establish a bright line for when detention after an initial bond hearing and prior to the issuance of a final order of removal becomes unconstitutional. *Cf. Zadvydas v. Davis*, 533 U.S. 678, 683 (2001) (holding that, past the ninety-day removal period established under § 1231(a)(2), an alien's detention following a final order of removal is presumptively reasonable for six months).

## III. RECOMMENDATION

For the reasons explained above, the Court **RECOMMENDS** that the Petition, ECF No. 1, be **DENIED**.

## IV. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, Petitioner is notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party. *See* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1954).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to Petitioner and to counsel of record for Respondents.

/s/
Lawrence R. Leonard
~~United States Magistrate Judge~~
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
August 7, 2026